**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JOSEPH ALVAREZ,**

                              Plaintiff,

                v.                                                    5:99-CV-1352
                                                     (FJS/GJD)

**QPI MULTIPRESS, INC.; PNEUMOABEX, CORP.;**
**EAGLE SIGNAL CONTROLS, INC.; DANAHER**
**CONTROLS CORP., and BARRON MACHINERY, INC.,**

                              Defendants.

**PNEUMOABEX, CORP.,**

                              Third-party Plaintiff,

                v.

**ESQUIRE NOVELTY CORPORATION, a division of**
**Strombecker Corporation; and STROMBECKER**
**CORPORATION,**

                              Third-party Defendants.

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **FINKELSTEIN & PARTNERS, LLP**<br>436 Robinson Avenue<br>Newburgh, New York 12550<br>Attorneys for Plaintiff | **ELEANOR L. POLIMENI, ESQ.** |
| **FRIEDMAN, HIRSCHEN & MILLER, L.L.P.**<br>100 Great Oaks Boulevard, Suite 124<br>Albany, New York 12203<br>Attorneys for Defendant/Third-party<br>Plaintiff Pneumoabex, Corp. | **JEFFREY N. MILLER, ESQ.**<br>**JOHN L. ORFAN, ESQ.** |

| | |
|---|---|
| **MESIROV GELMAN JAFFE CRAMER & JAMIESON**<br>Mellon Bank Center, 38th Floor<br>1735 Market Street<br>Philadelphia, Pennsylvania 19103<br>Attorneys for Defendant/Third-party Plaintiff Pneumoabex, Corp. | **ANTHONY J. WATKINS, ESQ.** |
| **GOLDBERG SEGALLA LLP**<br>5789 Widewaters Parkway<br>Syracuse, New York 13214<br>Attorneys for Defendants Eagle Signal Controls, Inc.; Danaher Controls Corp.; and Danaher Corporation | **KENNETH M. ALWEIS, ESQ.** |
| **CARTER, CONBOY, CASE, BLACKMORE MALONEY AND LAIRD, P.C.**<br>20 Corporate Woods Boulevard<br>Albany, New York 12211-2362<br>Attorneys for Third-party Defendants Esquire Novelty Corporation and Strombecker Corporation | **JOHN T. MALONEY, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are the following motions: (1) Plaintiff's motion pursuant to Rule 60 of the Federal Rules of Civil Procedure and Local Rule 7.1 for reconsideration of this Court's August 22, 2005 Memorandum-Decision and Order and (2) Defendants Eagle Signal Controls, Danaher Controls Corp. and Danaher Corporation's motions (a) for additional discovery and (b) for reconsideration of that part of this Court's August 22, 2005 Memorandum-Decision and Order that denied Defendant Danaher Corporation's motion for summary judgment.

## II. BACKGROUND

Plaintiff was injured on April 22, 1999, while operating a trim press that his employer, Third-party Defendant Esquire Novelty Corporation ("Esquire"), owned at its plant in Amsterdam, New York. He was using the press to form toy gun parts. On the day of the accident, Plaintiff pressed the two buttons on the press required to operate it. The press completed a cycle. Plaintiff then reached into the press with his left hand to withdraw the finished product. As he did so, he looked away from the press and felt the press cycle and crush his hand.

Defendant Pneumoabex Corp.'s predecessor-in-interest Denison had manufactured the trim press in 1963. As originally designed, the press had a manual control system that was operated using two hand levers located on either side of the press. The press was designed to operate when both levers were simultaneously depressed and to stop when either or both levers were released.

The record contains no information about the ownership of the press between 1963 and 1980. In 1980, Defendant Barron Machinery, Inc. ("Barron") sold the press to Third-party Defendant Strombecker Corporation. At some point between 1963 and 1980, someone had removed the original manual control system and replaced it with an electrical control system consisting of push buttons, electronic control circuitry, and a solenoid-equipped control valve. The electrical control system required the operator to press two palm buttons located on the front of the press. The press was designed to cycle only when both palm buttons were pressed. Part of the electrical control system was a controller that Defendant Eagle Signal Controls, Inc. ("Eagle Signal") manufactured.

In his amended complaint, Plaintiff asserted claims against Defendants sounding in negligence, strict liability design defect, and strict liability manufacturing defect.[1] Plaintiff also asserted a claim against Defendants, other than Defendant Barron,[2] for breach of implied warranty of merchantability and breach of express warranty.[3]

In response, Defendant Eagle Signal asserted causes of action for contribution against Defendant Pneumoabex and Defendant Barron and against Third-party Defendants. Defendant Pneumoabex asserted claims for contribution and indemnification against Defendants Eagle Signal and Barron and against Third-party Defendant Strombecker. Third-party Defendant Strombecker asserted claims for contribution and indemnification against Defendants, and Third-party Defendant Esquire asserted claims for contribution and indemnification against Defendant Pneumoabex.

At various times, the parties filed the following motions: (1) Defendant Eagle Signal moved to exclude Plaintiff's expert, Igor Paul, from testifying as an expert; (2) Defendant Eagle Signal moved for summary judgment with respect to all claims and cross-claims asserted against it; (3) Defendant Eagle Signal moved to dismiss Plaintiff's claims and Third-party Defendants'

---

[1] After he filed his amended complaint, Plaintiff withdrew his manufacturing defect claims against Defendants Eagle Signal, Danaher Controls Corp. and Danaher Corporation. *See* Dkt. No. 114 at Pt. 1 at 24. Therefore, in its August 22, 2005 Memorandum-Decision and Order, the Court granted these Defendants' motions for summary judgment with respect to those claims. *See* Dkt. No. 121 at 2 n.1.

[2] Although Plaintiff served Defendant Barron with process, it has never appeared in this action.

[3] After filing his amended complaint, Plaintiff agreed not to assert an express warranty claim against Defendant Eagle Signal. *See* Dkt. No. 114 at Pt. 1 at 24. Therefore, in its August 22, 2005 Memorandum-Decision and Order, the Court granted Defendant Eagle Signal's motion for summary judgment with respect to that claim. *See* Dkt. No. 121 at 3 n.1.

cross-claims against it due to their spoliation of material evidence; and (4) Defendant Pneumoabex moved for summary judgment with respect to all claims and cross-claims asserted against it.

In a Memorandum-Decision and Order dated August 22, 2005, the Court disposed of these motions as follows: (1) denied Defendant Eagle Signal's motion to preclude Dr. Paul from testifying as an expert; (2) permitted Defendants and Third-party Defendants to file a motion for further discovery in light of Dr. Paul's newly developed opinions; (3) denied Defendant Eagle Signal's motion for summary judgment with respect to Plaintiff's negligence, strict liability design defect and implied warranty of merchantability claims; (4) granted Defendant Eagle Signal's motion for summary judgment with respect to Plaintiff's strict liability manufacturing defect and express warranty claims; (5) denied Defendant Eagle Signal's motion to dismiss Plaintiff's complaint and Third-party Defendant Strombecker's cross-claims against it because of spoliation; (6) granted Defendant Pneumoabex's motion for summary judgment with respect to all of Plaintiff's claims and with respect to Defendant Eagle Signal's and Third-party Defendants Strombecker's and Esquire's cross-claims against it; (7) granted Defendant Eagle Signal's motion for summary judgment with respect to Defendant Pneumoabex's cross-claims against it; (8) *sua sponte* granted Defendant Barron and Third-party Defendant Strombecker summary judgment with respect to Defendant Pneumoabex's cross-claims against them; and (9) *sua sponte* granted Defendant Eagle Signal summary judgment with respect to Third-party Defendant Strombecker's cross-claims against it. *See* Dkt. No. 121 at 16-17.

As a result of these rulings, the only claims remaining in this action are (1) Plaintiff's negligence, strict liability design defect, and implied warranty of merchantability claims against

Defendants Eagle Signal, Danaher Controls Corp. and Danaher Corporation; (2) Plaintiff's negligence, strict liability design defect, and strict liability manufacturing defect claims against Defendant Barron; (3) Defendants Eagle Signal's, Danaher Control Corp.'s and Danaher Corporation's cross-claims for contribution against Defendant Barron and Third-party Defendants; and (4) Third-party Defendant Strombecker's cross-claims for contribution and indemnification against Defendant Barron. *See id.* at 18 n.11.

### III. DISCUSSION[4]

A.  **Defendant Danaher Corporation**

Defendants Eagle Signal, Danaher Controls Corp. and Danaher Corporation seek reconsideration of the Court's decision to deny summary judgment to Defendant Danaher Corporation on the ground that Defendant Danaher Corporation is a holding company and, as such, "does not design, manufacture or sell the control module that is the subject of this action." *See* Affidavit of Kenneth M. Alweis, dated September 20, 2005, at ¶ 8.

Plaintiff does not object to the Court granting this motion. Accordingly, the Court grants Defendants' motion for reconsideration regarding this issue and grants Defendant Danaher Corporation's motion for summary judgment.

---

[4] The Court notes that, although Plaintiff relies, in part, upon Rule 60 of the Federal Rules of Civil Procedure as a basis for his motion for reconsideration, that Rule does not apply to this case because Rule 60 applies only to final judgments or orders. Rather, Rule 54(b) of the Federal Rules of Civil Procedure, which governs orders that "adjudicate[] fewer than all the claims or the rights and liabilities of all the parties . . . ," *see* Fed. R. Civ. P. 54(b), as well as this District's Local Rule 7.1, governs Plaintiff's motion for reconsideration.

**B.	Defendants Eagle Signal and Danaher Controls Corp.'s motion for further discovery regarding the opinions of Plaintiff's expert, Dr. Paul**

In its August 22, 2005 Memorandum-Decision and Order, the Court denied Defendant Eagle Signal's motion to preclude Plaintiff's expert, Dr. Paul, from offering expert testimony. *See* Dkt. No. 121 at 9. In light of this decision, the Court afforded Defendants and/or Third-party Defendants the opportunity to move for further discovery in two respects. First, in addressing Defendant Eagle Signal's argument that Dr. Paul's affidavit was not admissible because it expressed opinions that were not contained in his report, the Court determined that, "[a]lthough Dr. Paul's Rule 26 report [was] inadequate in several respects, and his delay in supplementing the report [was] considerable, there [was] no evidence that either the inadequacy or the delay was intentional or indicative of bad faith." *See id.* at 6-7 n.6. Furthermore, the Court found that, because "his report cover[ed] much of his current testimony in summary fashion, Defendants and Third-Party Defendants ha[d] not suffered surprise." *See id.* Therefore, the Court concluded that "preclusion of Dr. Paul's affidavit [was] too severe a sanction . . . but, nonetheless, grant[ed] [either Defendants and/or Third-party Defendants] leave to move for [further] discovery [in light of Dr. Paul's newly developed opinions]." *See id.* Finally, the Court noted that "Dr. Paul's affidavit appear[ed] to contradict portions of his deposition testimony. *See* Paul Dep. at 57:5-6, 59:21-60:17, 61:4-7." *See id.* at 8 n.7. Therefore, the Court provided Defendants and/or Third-party Defendants with "leave to move for [further] discovery to explore [these apparent contradictions]." *See id.*

In their motion for leave to conduct additional discovery, Defendants note that "issues exist with respect to the quality and extent of the disclosure [of Dr. Paul]." *See* Defendants'

-7-

Memorandum of Law at 1.  Moreover, Defendants state that the Court also noted that "Plaintiff's expert made no mention of a feasible alternative design in his report and only 'loosely' identified what Dr. Paul described as a similar product, a product from Rockford Systems Inc. (Memorandum-Decision and Order page 12)."  *See id.* at 2.  Therefore Defendants request that the Court allow them to conduct additional discovery regarding the limited issue of alternative design, which "may consist of a limited number of additional witnesses and experts and, perhaps, limited additional depositions."  *See id.*

Plaintiff does not object to the additional discovery, although he notes that he "agree[s] to the discovery without admitting that there is any defect or deficiency relative to the expert disclosure of Igor Paul."  *See* Affirmation in Partial Opposition of Lawrence D. Lissauer, dated October 4, 2005, at ¶ 4.  Moreover, Plaintiff asks that, if the Court allows Defendants to "retain a new expert, [the Court also allow] [P]laintiff . . . to retain new experts of [his] own to rebut any and/or new claims advanced by a new defendant expert."  *See id.*  Plaintiff's counsel submits that he "believe[s] that [Defendants'] retention of a new expert might be prejudicial to [Plaintiff's] interest and hence request[s] that . . . [P]laintiff be afforded additional time to retain new experts, if [he] so desire[s]."  *See id.*

Finally, with respect to Defendants' request for depositions, Plaintiff asks "that the Court not grant to the [D]efendants carte blanche in this matter . . . [because] [D]efendants have not met their burden of proof in this regard.  If the Court is inclined to grant new depositions, it is asked that the Court issue some sort of parameters as to time and as to the limits of this additional discovery."  *See id.* at ¶ 5.  Moreover, Plaintiff asks that "the Court order limited discovery, and that . . . [D]efendants give an offer of proof as to what they seek."  *See id.*

The Court limited the scope of additional discovery in its August 22, 2005 Memorandum-Decision and Order.  Moreover, Defendants' request is similarly limited to the issue of alternative design.  Therefore, the Court finds no reason to place any additional limitations on the scope of discovery.  Furthermore, the Court denies Defendants' request to conduct any further depositions, other than another deposition of Dr. Paul, denies their request to retain additional experts, and denies Plaintiff's request for permission to retain another expert.  Finally, to the extent that any issues arise during the course of this additional discovery, the Court instructs the parties to present these disputes to Magistrate Judge DiBianco for resolution.

### C.     Plaintiff's motion for reconsideration

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b).

However, the Second Circuit has

> limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 332 F.3d 147, 167 (2d Cir. 2003) (quotation omitted).

Thus, the Second Circuit has held that "those decisions may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Id.* (quotation omitted).

In this case, Plaintiff relies upon the "availability of new evidence" and "the need to . . . prevent a manifest injustice" to support his motion for reconsideration. Specifically, Plaintiff argues that had the Court had before it page 4 of Dr. Paul's affidavit, which Plaintiff's counsel inadvertently omitted when he submitted Plaintiff's opposition papers, the Court would not have granted Defendant Pneumoabex's motion for summary judgment. *See* Affidavit of Lawrence D. Lissauer, sworn to September 1, 2005, at ¶ 8. Plaintiff further explains that the missing page "addresses [D]efendant Pneumoabex's contentions point by point, and sets forth the expert's opinions sequentially in discrete paragraphs." *See* Plaintiff's Memorandum of Law at 5.

Defendant Pneumoabex opposes Plaintiff's motion, arguing that "[P]laintiff simply recycles arguments already made and rejected by the Court, and even invites the Court to apply legal precedent not previously cited (see [P]laintiff's Memorandum of Law, p. 10) in his attempt to convince this Court that it somehow mis-applied the well-settled products liability doctrine of 'subsequent modification'." *See* Defendant Pneumoabex's Memorandum of Law at 2. Furthermore, Defendant Pneumoabex contends that with regard to the "clerical error resulting in [P]laintiff's failure to include page 4 of Dr. Paul's Affidavit, . . ., the contents of the 'missing page' appear elsewhere, repeatedly in the record and the opinions contained therein were expressly considered by this Court and deemed insufficient to support . . . [P]laintiff's burden." *See id.* at 3.

In sum, Defendant Pneumoabex asserts that

-10-

> [w]hat counsel for [P]laintiff is in reality urging is that this Court must not only accept that page 4 of the Paul Affidavit contained an opinion or conclusion that was not already before it, a patently inaccurate proposition, but also that this Court erroneously applied an inapplicable legal doctrine to an incomplete set of facts. In fact, this Court expressly acknowledged Dr. Paul's opinion with respect to "point-of-operation guarding" and found it to be inadequate to meet . . . [P]laintiff's burden. . . . Contrary to [P]laintiff's current assertion, this Court had ample opportunity to assess [P]laintiff's arguments, all of which were thoroughly briefed and discussed in the lengthy submission which preceded the Court's decision.

*See id.* at 4.

Having reviewed Plaintiff's arguments in support of his motion for reconsideration, including the previously missing page 4 of Dr. Paul's affidavit, as well as Defendant Pneumoabex's arguments in opposition to this motion, the Court, in an abundance of caution and in order to prevent any manifest injustice that might result from the Court's failure to examine all of the relevant information, the Court grants Plaintiff's motion for reconsideration. In this regard, the Court notes that, although much of the information contained on page 4 of Dr. Paul's affidavit is scattered throughout the record, not all of the relevant information is available elsewhere.

In its August 22, 2005 Memorandum-Decision and Order, the Court noted that

> Plaintiff relies upon the opinions of its expert, Dr. Paul, for his contention that Defendant Pneumoabex is liable for designing a defective product despite the press' subsequent modification. Dr. Paul states that Plaintiff's accident would have been prevented if Defendant Pneumoabex had provided point-of-operation guarding. *See* Paul Aff. at Exhibit "B" at 2. What Dr. Paul does not state is that the accidental cycling of the press and the consequent injury of an unguarded operator were reasonably foreseeable with the press' original manual operating system. Instead, Dr. Paul notes that, in 1963, Denison was also manufacturing presses with electrical operating systems similar to the one that was on the press at the time of Plaintiff's injury. However, this fact would only potentially be significant if the alteration from a manual to an electrical

-11-

>control system was relatively simple and, thus, reasonably foreseeable. Dr. Paul does not address the nature of such an alteration.

*See* Dkt. No. 121 at 15.

Therefore, the Court concluded that "Plaintiff ha[d] failed to show that the press was defective at the time it left Denison's control" and granted Defendant Pneumoabex's motion for summary judgment. *See id.*

In support of his motion, Plaintiff contends that he has

>demonstrated that the manufacturer [Defendant Pneumoabex's predecessor-in-interest] marketed the product which was not reasonably safe in design, a fact established by [Dr. Paul's] opinion that it was feasible to design the product in a safer manner as proven by the feed tables, which would have allowed the work to be done without [P]laintiff's hands being placed in the zone of danger, and that the design defect was a substantial factor in causing the [P]laintiff's injuries.

*See* Plaintiff's Memorandum of Law at 6.

To support this argument, Plaintiff points to a statement in Dr. Paul's affidavit that "the design of the Denison HydrOilics Multipress sold in 1963 was improper, inadequate, defective and inherently and unreasonably dangerous in failing to provide ANY point-of-operation guarding for the press.' (Paul Aff., p. 3, ¶ 8; emphasis in original.)." *See id.*

Furthermore, Plaintiff argues that

>[t]he Court mistakenly framed the foreseeability issue as whether [D]efendant Pneumoabex had reason to know that the controls would be changed from manual to electric. However, the change in the method of controlling the ram is irrelevant to the issue of the underlying defective design of the press that permitted operators to put their hands underneath the ram to extricate the parts. This defect <u>pre-dated</u> the change in the controls, and constituted an inherent design defect.

*See id.* at 7.

Thus, Plaintiff asserts that

> [t]he relevant foreseeability issue is whether the defendant manufacturer had reason to know that an operator would have to put his hands in the unguarded, unprotected area of the press, and that this act posed a risk of injury in the event the ram descended unexpectedly, i.e., whether the manufacturer knew or should have known that the ram might fail for whatever reason while the operator's hands were underneath.

*See id.*

In sum, Plaintiff asserts that

> [t]he Court mistakenly based its decision on the fact that Dr. Paul did not discuss the nature of the alteration of the controls. However, the alteration is not relevant to the theory asserted against the defendant manufacturer, which is that the ram area was not protected. Rather, it was up to Dr. Paul to discuss the alternative designs that would have remedied the design flaw asserted against this defendant, which he did.

*See id.* at 8.

On the "missing" page 4 of his affidavit, Dr. Paul offers the following opinions in response to Defendant Pneumoabex's motion for summary judgment:

> 11)   The changes made to the original press had nothing to do with the failure by Denison to provide point-of-operation guarding. Proper point-of-operation guarding of the original press would have prevented [Plaintiff's] accident and injuries regardless of what caused the unexpected double cycling.
>
> 12)   I completely disagree with Pneumoabex' third argument that they could not provide effective point-of-operation guarding for the press because of the "infinite number of specific uses which a 12 ton press could be applied to". The work area of the press is limited and automatic feed tables as well as ram activated perimeter sweep and/or push-out guards were widely known and used on mechanical and hydraulic presses in the early 1960's.

-13-

>    Denison could and should have provided an integral feed-table on which lower molds or fixtures could be mounted, and/or should have provided alternate adjustable point-of-operation perimeter guarding such as ram operated sweep or push-out guards which would sweep the operator's hand(s) out of the danger area as the ram descended (for any reason).
>
>    * * * * * * * * * *
>
>    14)    Although the actual double cycle of the press was caused by a malfunction of a component not manufactured or sold by Denison, proper point-of-operation guarding of the original press would have prevented the accident and the plaintiff's injuries.
>
>    15)    My defective design opinions relative to Pneumoabex are independent of the type of controls which were furnished in 1963 or were present on the press at the time of the accident, but deal with Denison's failure to provide point-of-operation guarding on the 1963 press and how such guarding should have been provided integral with the press. . . .

See *id.* at ¶¶ 11-12, 14-15.

After reviewing the statements on page 4 of Dr. Paul's affidavit, together with all of the other relevant information which the Court had before it at the time that it issued its previous decision, the Court finds that, although it is a close call, these previously missing statements are sufficient, although just barely, to create an issue of fact regarding Plaintiff's claim that the press was defective at the time that it left the manufacturer's control. Although ultimately a jury may find that the machine was not defective at the time that it left the manufacturer's control or that a subsequent modification was a substantial one that was the ***sole*** cause of Plaintiff's accident or that the modification was not reasonably foreseeable, the Court finds that Dr. Paul's report and his affidavit, when considered as a whole, are sufficient to create an issue of fact regarding these issues. Thus, upon reconsideration, the Court denies Defendant Pneumoabex's motion for

summary judgment regarding these claims.[5,6]

## IV. CONCLUSION

After carefully reviewing the entire file in this matter and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's motion for reconsideration of the Court's August 22, 2005 Memorandum-Decision and Order is **GRANTED** with respect to all of Plaintiff's claims against Defendant Pneumoabex except for Plaintiff's failure-to-warn claim; and the Court further

**ORDERS** that, after reconsideration, Defendant Pneumoabex's motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that the following claims are reinstated: (1) all the cross-claims against Defendant Pneumoabex; (2) all of Defendant Pneumoabex's cross-claims against Defendant Eagle Signal, Defendant Barron and Third-party Defendant Strombecker; (3) Defendant Eagle Signal's cross-claim for contribution against Third-party Defendant Strombecker; and (4) Third-party Strombecker's cross-claims against Defendant Eagle Signal and Defendant Barron; and the

---

[5] The Court notes that Plaintiff also argues that the Court erred by not considering its failure-to-warn claim separately. However, as the Court noted in its August 22, 2005 Memorandum-Decision and Order, Plaintiff's amended complaint does not contain a failure-to-warn claim. *See* Dkt. No. 121 at 3 n.4 (citing Dkt. No. 28). Therefore, to the extent that Plaintiff is asking the Court to reconsider its previous decision regarding his failure-to-warn claim, the Court denies that request.

[6] Since the Court is reinstating Plaintiff's claims against Defendant Pneumoabex, it also reinstates the following claims: (1) all the cross-claims against Defendant Pneumoabex; (2) all of Defendant Pneumoabex's cross-claims against Defendant Eagle Signal, Defendant Barron, and Third-party Defendant Strombecker; (3) Defendant Eagle Signal's cross-claim for contribution against Third-party Defendant Strombecker; and (4) Third-party Defendant Strombecker's cross-claims against Defendant Eagle Signal and Defendant Barron.

Court further

**ORDERS** that, upon reconsideration, Defendant Danaher Corporation's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Defendant Eagle Signal's and Defendant Danaher Controls Corp.'s motions for additional discovery are **GRANTED** insofar as Defendants may conduct a deposition of Dr. Paul limited to the issues that the Court outlined in its August 22, 2005 Memorandum-Decision and Order and is **DENIED** in all other respects; and the Court further

**ORDERS** that, to the extent that Defendant Pneumoabex requests permission to retain another expert or to depose individuals other than Dr. Paul, these requests are **DENIED**; and the Court further

**ORDERS** that Plaintiff's request for permission to retain another expert is **DENIED**; and the Court further

**ORDERS** that the parties are to complete all additional discovery no later than **November 2, 2007**, and are to address any discovery disputes that may arise to Magistrate Judge DiBianco for his resolution; and the Court further

**ORDERS** that, if after completing the additional discovery, the parties wish to file additional dispositive motions, they must file any such motions on or before **January 4, 2008**.

**IT IS SO ORDERED.**

Dated: July 5, 2007
       Syracuse, New York

                                  Frederick J. Scullin, Jr.
                                  Senior United States District Court Judge